IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEE DACHTLER,

                Plaintiff,

     v.

JO ANNE B. BARNHART, Commissioner of Social Security,

                Defendant.

CV-05-6177-CO

FINDINGS AND RECOMMENDATION

COONEY, Magistrate Judge:

## INTRODUCTION

Plaintiff Lee Dachtler brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g).

The Commissioner concedes that her decision contains errors and moves the court to remand for further proceedings (docket # 22). Dachtler opposes additional proceedings and seeks an immediate award of benefits. The parties agree the Commissioner's decision must be reversed and the action remanded. The primary issue is whether to remand for further administrative proceedings or to remand for direct payment of benefits. The Commissioner's motion to remand for further

1 - FINDINGS AND RECOMMENDATION

proceedings is granted.  The Commissioner's final decision is reversed and remanded for further proceedings in accordance with the opinion below.

## **BACKGROUND**

Dachtler was born April 11, 1949, and was drafted into the army after graduation from high school. Tr. 15, 166.[1] Dachtler served as an infantryman in Viet Nam in 1968-1969 where he was wounded and awarded the Purple Heart. Tr.166.  He sought treatment at the Veterans Administration (VA) Center in Salem in September 1998.  Dachtler reported an increase in the symptoms he has experienced since returning from Viet Nam.  The symptoms include anger, depression, war-related nightmares, sleep disturbances, intrusive war memories, anxiety, distrust of others, and an inability to maintain social relations or employment.  He reported frequent alcohol use and occasional cannabis use for "relaxation" and sleep. Tr. 165-168.  Dachtler was initially awarded a 50% disability rating from the VA for combat-related Post Traumatic Stress Disorder (PTSD).  He appealed to the VA Board in 2001 and was awarded a 70% disability rating for PTSD and total compensation for unemployability.  Tr. 85.

Dachtler has worked as a general laborer, gas station attendant, retail clerk, pizza delivery person, bartender/cook and in auto sales.  Tr. 15.  He was fired from or quit employment due to conflicts with supervisors and coworkers.  After a period of stable employment he was "rather dramatically fired and escorted out of the building by security at Tektronix after he insulted and threatened his supervisors." Tr. 176.  Dachtler moved to Depoe Bay, Oregon to "get away from people." Tr. 198.  His most recent employment was as at a bar and grill.  Dachtler started as a

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of record filed with the Commissioner's Answer. (Docket #7, 9).

bartender but his employer moved him to a position as short-order cook due to customer conflicts. He quit that job in 1998 after a heated argument with his employer and has not worked since. Tr. 105, 176. Dachtler filed his application for DIB on March 6, 2002. Tr. 63. He alleges that he became disabled on October 1, 1998 due to PTSD. Tr. 14. The claim was denied initially and on reconsideration and a hearing was held on February 7, 2005. The Administrative Law Judge (ALJ) found Dachtler not disabled for purposes of social security DIB and that is the final decision of the Commissioner. Tr. 15.

## **DISABILITY ANALYSIS**

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Dachtler does not challenge the first three steps of this process.

For the purposes of step four, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. § 404.1545; SSR 96-8p. At step four, the ALJ must determine whether the claimant retains the RFC to perform past relevant work. If the claimant can perform past

3 - FINDINGS AND RECOMMENDATION

relevant work he is not disabled. 20 C.F.R. § 404.1520(f). However, if the claimant cannot perform past work, the Commissioner proceeds to step five.

At step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-142; 20 C.F.R. § 404.1520(g). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. § 404.1566.

If the claimant is found disabled and there is medical evidence of a substance abuse disorder, the ALJ must perform the sequential evaluation a second time to determine whether drug addiction or alcoholism "is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). It is a material factor when the claimant's remaining limitations would not be disabling if the claimant stopped using drugs or alcohol. 20 C.F.R. §404.1535(b). A claimant is not considered disabled if drug addiction or alcoholism is a contributing factor material to the determination of disability 42 U.S.C. § 423(d)(2)(C); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

In materiality determinations, the claimant bears the burden of proving that drug addiction or alcoholism (DAA) is not a contributing factor material to the disability determination. *Ball v. Massanari,* 254 F.3d 817, 821 (9th Cir. 2001). However, if it is not possible to separate the limitations of DAA from the limitations of the mental disability, then DAA is not considered a material factor. *Clark v. Apfel*, 98 F. Supp.2d 1182, 1185 (2000) (citing the Social Security Administration's (SSA) Emergency Teletype on DAA, August 30, 1996, Answer 29).

## THE ALJ's FINDINGS

The ALJ determined Dachtler was insured for purposes of DIB through June 30, 2002. He found Dachtler had not engaged in any substantial gainful activity since October 1998. The ALJ found Dachtler suffered from severe mental impairments, including PTSD, depressive disorder, "negativistic" personality disorder, and a substance addiction disorder. Tr. 18. In determining Dachtler's RFC, the ALJ stated:

> "I have concluded the claimant is disabled by a combination of mental impairments when limitations resulting from alcohol and drug dependence are considered. However, alcohol is material in the decision he is disabled. If he were not abusing alcohol, limitations resulting from his other medically determinable impairments would not disable him. If he were not abusing, he would have the residual functional capacity to return to work he performed in the past, despite limitations resulting from severe mental impairments."     Tr. 15.

The ALJ also found Dachtler should "avoid workplaces that contain hazards, and is limited to routine, repetitious work, preferably performed alone. He cannot perform work as part of a team, as he has marked social functioning limitations." Tr. 22.

A Vocational Expert testified at the hearing that if Dachtler was limited to jobs with brief social interaction in the workplace he could return to his former job as general laborer and cook. However, he would not be able to perform any of his former jobs, or any employment, if he had marked difficulty in social functioning. Tr. 293. The ALJ found that without DAA Dachtler could perform past relevant work. He further determined that Dachtler's DAA was a contributing factor material to the decision that he was disabled, and following "Section 105 of Public Law 104-121, he is not entitled to receive Disability Insurance Benefits under Title II of the Social Security Act." Tr. 24.

5 - FINDINGS AND RECOMMENDATION

## STANDARD FOR REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings.

A remand for an award of benefits is appropriate when "no useful purpose would be served by further administrative proceedings" or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

Improperly rejected evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Harman v. Apfel*, 211 F.3d at 1178 citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Of course, the third prong of this test is actually a subpart of the second. *See Harman*, 211 F.3d at 1178 n. 7.

## DISCUSSION

The Commissioner concedes that her decision cannot be sustained, but contends that further administrative proceedings are required because of unresolved factual issues. She admits that the ALJ erred in not properly considering the opinion of Dr. Golletz, the VA's determination of disability, the credibility of Dachtler, and the materiality of Dachtler's substance abuse (DAA). The Commissioner has also determined that the ALJ erred in his RFC assessment and finding that Dachtler could perform his past relevant work. Dachtler opposes the Commissioner's motion and

asserts that further proceedings are not necessary to establish that he is disabled. He argues that the opinion of Dr. Golletz and the VA determination of disability support a finding of disability with DAA not being a material factor. Dachtler argues further that the ALJ's credibility findings rested on his activities of daily living which he asserts are consistent with his disability.

### I.     Medical Source Statements

Dr. Golletz, a psychologist under contract with the VA, conducted a three-day evaluation of Dachtler in September and October 1998 upon referral from the Salem Veteran's Center. Tr. 156. Dr. Golletz performed psychological testing on Dachtler. He also used tests specifically developed and validated for use in the VA system to determine combat exposure, and to assess the level of PTSD symptomatology in combat veterans. Tr. 167. The test results indicated a heavy level of combat exposure relative to other military personnel that was consistent with Dachtler's record of service in Viet Nam. Tr. 167. Dr. Golletz diagnosed chronic PTSD, depressive disorder, alcohol abuse and gave a Global Assessment of Functioning (GAF) of 45.[2] Dr. Golletz further stated:

> "His description of his return from Viet Nam suggests that emotional numbing and social alienation were present essentially immediately. He reported many classic symptoms of PTSD including intrusive memories and nightmares, anxiety and tension, sleep disturbance and lack of trust. Finally, he reported a history of alcohol abuse which has been noted as common strategy among combat veterans for numbing and self-medicating chronic anxiety. Mr. Dachtler appears to have suffered significant impairment in psychological, social and occupational functioning as a result of his PTSD. Results also indicate the presence of depression as a secondary disorder to the PTSD which further intensifies his condition. Mr. Dachtler appears to require extensive mental health treatment." Tr. 168.

---

[2] A GAF of 41 to 50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) OR any serious impairment in social occupational, or school functioning (e.g., few friends, unable to keep a job). The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000).

7 - FINDINGS AND RECOMMENDATION

Dr. Golletz noted that Dachtler's impairments, including lack of trust and avoidance, would be a barrier to treatment, and, Dachtler did not follow through at that time with therapy.

Dachtler again sought treatment from Dr. Golletz in March 1999. In August 1999, Dr. Golletz conducted a follow-up evaluation with a clinical interview, review of prior records, and testing. Dr. Golletz noted that Dachtler's testing indicated a high severity of many symptoms of PTSD related to "avoidance and numbing, irritability, and emotional and physiological distress in response to trauma recall." Tr. 159. Dachtler also scored "highest on scales associated with depressed mood, obsessive thinking, hostility, suspiciousness and lack of trust, and interpersonal sensitivity." *Id*. Dr. Golletz diagnosed a current GAF of 40.[3] *Id*. He also diagnosed chronic PTSD, depressive disorder, and alcohol and cannabis dependence. Dachtler had several therapy sessions with Dr. Golletz in the fall of 1999 and was "angry and confrontational" several times. Tr. 176. In November of 1999, Dr. Golletz wrote a letter to the VA in support of Dachtler's appeal from a 50% disability rating. Tr. 175. In the letter, Dr. Golletz stated:

> "I would rate his global assessment of functioning in the 40-50 range as a result of impairments due to PTSD and the related depression. This is substantially lower than the 60-61 indicated in the service connection rating decision letter dated 5/17/99."

Tr. 176.

The other GAF score referred to by Dr. Golletz appears to be the determination of Dr. Monkarsh. Dr. Monkarsh assessed Dachtler for the VA on March, 17, 1999. Dr. Monkarsh's original GAF was 50-51, which he later stated was a typographical error and amended the score to

---

[3] A GAF of 31 to 40 indicates some impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000).

8 - FINDINGS AND RECOMMENDATION

60-61.[4]  Dr. Monkarsh diagnosed chronic PTSD, mild to moderate, cannabis abuse, and alcohol dependence.  Dr. Monkarsh's diagnostic notes state:

> "The veteran appears to suffer from significant social, emotional, and industrial impairment as a result of these post traumatic stress disorder symptoms.  He has displayed a long history of abnormalities of conduct and judgment, given his past DUI in 1982, as well as his long history of alcohol and cannabis abuse.  He appears to be only marginally employable given his difficulties obtaining and maintaining stable employment.  He also appears to be only marginally competent to manage his benefits given his current abuse of alcohol and occasional abuse of marijuana."

Tr. 203.

The VA conducted another assessment following Dachtler's appeal.  Dr. Sacks performed the assessment of Dachtler for the VA and reached the same diagnosis as Dr. Monkarsh.  However, Dr. Sacks gave an overall GAF of 45, and GAF due to PTSD only as 60.  Dr. Sacks noted "Mr. Dachtler's significant symptoms of PTSD with associated depression are complicated by alcohol and drug use."  Tr. 190.

The ALJ called an impartial expert, Dr. Nance, to review records and testify at the hearing. Dr. Nance testified that the in the absence of DAA, Dachtler's social functioning impairment would be changed from marked to moderate.  He further testified that a moderate limitation would not totally preclude employment.  Tr. 286.  Dr. Duvall, the agency physician, stated in his evaluation that he did not review any prior medical records and a finding of PTSD was inconclusive.  The ALJ did not give much credence to the evaluation of Dr. Duvall, due to the limited nature of the evaluation. Tr. 22.  Dr. Golletz was a treating physician and also performed a series of psychological

---

[4]GAF of 51-60: Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers);
GAF of 61-70: Some mild symptoms (e.g. depressed mood and mild insomnia OR some difficulty in social occupational or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. The American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 34 (4th ed. 2000).

9 - FINDINGS AND RECOMMENDATION

tests upon Dachtler. The VA physicians, Drs. Monkarsh and Sacks, were examining physicians. Generally, a treating physician's opinion is afforded the greatest weight in disability cases because the treating physician is "employed to cure and has the best opportunity to know and observe the patient as an individual." *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993)[citations omitted]. A treating physician's opinion is controlling when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence of record. 20 C.F.R. § 404.1527(d)(2).

The ALJ can reject a treating physician's opinion that is not contradicted by another physician only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). He can reject a treating physician's opinion in favor of the conflicting opinion of another physician only if he makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id* at 957, quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Both parties agree the ALJ failed to comply with these principles by ignoring Dr. Golletz's opinion.

Dachtler asserts that this failure requires Dr. Golletz's opinion to be credited as a matter of law, citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law'")[citations omitted]. However, as the Commissioner correctly argues, crediting Dr. Golletz's opinion is not sufficient to determine disability because it does not establish Dachtler's functioning without DAA. It is not clear from Dr. Golletz's records whether his diagnosis of a GAF of 40-50 is based solely on PTSD and depression or includes Dachtler's DAA. If the diagnosis does consider Dachtler's DAA, it needs to be determined whether that is because the

10 - FINDINGS AND RECOMMENDATION

limitations of the DAA are not separable from the limitations of Dachtler's other mental impairments.

## II. VA Disability Rating

The Board of Veterans' Appeals, (VA Board) of the Department of Veterans Affairs, ruled on Dachtler's appeal from a 50% disability rating due to PTSD on May 31, 2001. The VA Board reviewed the medical record and the reports of Drs. Golletz, Sacks, and Monkarsh. The VA Board increased Dachtler's disability rating to 70 % and found Dachtler's PTSD was of sufficient severity to prevent him from engaging in substantial gainful employment and thus awarded a total compensation rating based on unemployability. Tr. 83, 85. Addressing the effects of Dachtler's DAA on disability, the VA Board noted:

> "It appears from a review of the record that some attempts have been made to differentiate the symptomatology due to alcohol and substance abuse from that due to the service-connected PTSD. As pointed out by the veteran's representative, a recent judicial decision recognizes the possibility that, in some cases, it may be that the use of alcohol and drugs may be associated with the PTSD and indicative of an increase in severity of PTSD. *See Allen v. Principi*, No. 99-7199 (Fed. Cir. Feb 2, 2001). In the present case, several medical records suggest that the veteran may use alcohol and drugs to, in effect, self-medicate certain psychiatric symptoms. In this regard, the examiner who conducted an October 1998 examination commented that a history of alcohol abuse has been noted as a common strategy among combat veterans for numbing and self-medicating chronic anxiety. Other medical reports, include history given by the veteran to the effect that he uses alcohol and drugs for relaxation purposes. While the Board recognizes that disability due to alcohol and drug abuse is governed by 38 U.S.C.A.§1110 in terms of barring compensation for such disability, in the present case the Board is unable to find that the evidence clearly shows that the veteran's use of drugs and alcohol is totally unassociated with the service-connected PTSD. Accordingly, the Board looks to the overall disability picture." Tr. 81, 82.

The process for determining disability is very similar in the VA system and the Social Security Disability program. Both federal programs require a determination of disability without DAA as a material factor. The VA Board reached the conclusion that Dachtler's DAA was

11 - FINDINGS AND RECOMMENDATION

associated with his PTSD, and thus not separable. The ALJ is required to give "great weight" to the VA determination of disability. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). The ALJ may give less weight to the VA decision "if he gives persuasive, specific, valid reasons for doing so that are supported by the record. *Id.* Both parties agree that the ALJ failed to give great weight to the VA determination and did not give adequate reasons for doing so.

### III. Credibility Determination

The ALJ did not find Dachtler's statements regarding his impairments and his ability to work credible. While noting that he was honest about his alcohol and drug use, the ALJ found Dachtler "has been able to maintain his activities of daily living with no apparent problem." Tr. 21. The ALJ also noted that Dachtler's VA benefits gave him little incentive to return to work. In assessing a claimant's credibility, the ALJ must apply a threshold test articulated by the court in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986). The ALJ first determines if there is objective medical evidence of an impairment, and if the impairment could reasonably cause some degree of the claimant's symptom(s). *Id* at 1407. "If the claimant produces evidence to meet the *Cotton* test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)[citations omitted].

The Commissioner concedes that the ALJ did not properly address Dachtler's limited social functioning in his activities of daily living but asserts that the ALJ did give some reasons for rejecting Dachtler's credibility, primarily related to his alcohol abuse. However, the Commissioner concedes that the ALJ should reassess Dachtler's credibility on remand. In addition, the

Commissioner recommends another RFC assessment, and a step four and possible step five determination.

## CONCLUSION

The ALJ erred by failing to properly consider the opinion of Dr. Golletz and the disability rating decision of the VA Board and must do so on remand. The ALJ must also follow the policies and procedures of the SSA regarding the analysis of the materiality of Dachtler's DAA to his disability. In addition, the ALJ must properly determine Dachtler's credibility regarding his impairments. Further proceedings are appropriate to correct these errors.

## RECOMMENDATION

Based on the foregoing, the Commissioner's Motion to Remand (docket # 22) should be GRANTED. The Commissioner's final decision should be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Order of the Court.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. **Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.** *The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten days within which to file a response to the objections*. **Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.**

13 - FINDINGS AND RECOMMENDATION

DATED this 19th day of June, 2006.

                                          ____/s/_____
                                          John P. Cooney
                                          United States Magistrate Judge